IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA, for     *
the use and benefit of KRANE      *
DEVELOPMENT, INC., d/b/a ADS       *
SERVICES, INC.,                    *
                                   *
         Plaintiff,                *
                                   *
         v.                        *          CV 121-035
                                   *
GILBANE FEDERAL COMPANY;           *
TRAVELERS CASUALTY & SURETY        *
COMPANY; and OHC ENVIRONMENTAL     *
ENGINEERING, INC.,                 *
                                   *
         Defendants.               *

_____

O R D E R

_____

Before the Court is Defendant OHC Environmental Engineering, Inc.'s ("OHC") motion to set aside default (Doc. 23) and motion to quash service (Doc. 24).[1]  Plaintiff, United States of America, for the use and benefit of Krane Development, Inc., d/b/a ADS Services, Inc. ("ADS"), filed responses in opposition to both of OHC's motions (Docs. 30, 31) and OHC replied to those responses (Docs. 36, 37).  For the following reasons, OHC's motion to set aside default is **GRANTED** and OHC's motion to quash service is **GRANTED IN PART AND DENIED IN PART**.

_____

[1] Defendant OHC filed supplements to both of its motions that include notarized affidavits. (Docs. 25, 26.)  Beyond correcting a few scrivener's errors, there is nothing substantively different in the supplements and therefore the Court will only refer to the original filings in deciding the motions.

## I. BACKGROUND

Plaintiff filed the underlying action on February 18, 2021 against the above-named Defendants (Doc. 1) and then filed an amended complaint on February 23, 2021 (Doc. 4).  The Amended Complaint alleges Miller Act Bond breaches, unjust enrichment, and breach of contract claims.  (Doc. 4.)  The underlying facts involve various contracts under which Gilbane Federal Company ("Gilbane") contracted with the Army Corps of Engineers ("COE") for renovation projects on Fort Gordon.  (Id. ¶ 5.)  Gilbane then entered into contracts with OHC for the demolition and asbestos abatement work, and in turn, OHC entered into contracts with ADS to perform a portion of their contracted work.  (Id. ¶¶ 6-7.)

On February 18, 2021, summons was issued for all Defendants. (Doc. 2.)  On February 24, 2021, Plaintiff filed proof of service for Gilbane and Travelers Casualty & Surety Company ("Travelers") (Docs. 5, 6) and for OHC on March 4, 2021 (Doc. 7).  Gilbane and Travelers filed answers, affirmative defenses, and crossclaims on March 17, 2021.  (Docs. 8, 9.)  On March 25, 2021, Plaintiff moved for entry of default against OHC (Doc. 19) and the Clerk entered default the same day (Doc. 20).

## II. MOTION TO SET ASIDE DEFAULT

OHC moves to set aside the default entered against it pursuant to Federal Rule of Civil Procedure 55(c).  (Doc. 23.)  In support,

2

OHC argues: (1) the default was not culpable or willful, (2) it acted promptly to cure the default, (3) setting aside the default will not prejudice Plaintiff, (4) OHC will suffer significant financial loss as a result of the default, and further, OHC offers three potential meritorious defenses. (Id. at 8-13.) Plaintiff opposes the motion. (Doc. 30.)

## A. Legal Standard

Federal Rule of Civil Procedure 55(c) provides, "[t]he court may set aside an entry of default for good cause." What constitutes "good cause" varies from case to case. Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996) (citation omitted). To determine whether there is good cause, courts have considered, but are not limited to, factors such as "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." Id. (citations omitted). Regardless of which factors the court chooses, "the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." Id. (citation omitted). "[I]f a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief. Id. at 951-52.

3

The Eleventh Circuit has "a strong preference for deciding cases on the merits – not based on a single missed deadline – whenever reasonably possible." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1332 (11th Cir. 2014). But overall, setting aside a default is "within the discretion of the district court." Robinson v. United States, 734 F.2d 735, 739 (11th Cir. 1984) (citation omitted). There is no set formula the Court is required to use, but it will consider the factors set forth above.

## B. Analysis

Plaintiff's affidavit of service provides that OHC was served by Chandra Jacobs ("Ms. Jacobs"), a process server, at OHC's business address in Florida by leaving the summons, complaints, and exhibits with Audra Bosler ("Ms. Bosler"), listed as the office manager. (Doc. 7.) OHC asserts Ms. Bosler did not tell OHC's President, James Rizk ("Mr. Rizk"), about the pleadings, but simply placed the pleadings on his desk. (Doc. 23, at 8.) Mr. Rizk was working remote due to COVID-19 and states he did not even see the pleadings until he received a letter from Gilbane requesting OHC defend it in a lawsuit against ADS. (Id.) Mr. Rizk asserts that upon reviewing the letter and pleadings, he was still unaware OHC was a party to the litigation. (Id.) Upon learning default had been entered, OHC quickly retained Georgia counsel and filed the pending motions. (Id. at 9.) Plaintiff argues OHC was properly served through Ms. Bosler and knew about the suit but "hoped to

avoid answering to save its own money," exhibiting willful disregard to the action. (Doc. 30, at 2.)

Using the factors set forth above, the Court finds it appropriate to set aside default. As the Eleventh Circuit has provided, it is more beneficial to decide cases on the merits, rather than based on missed deadlines. OHC contends there were issues with the process of service on the company, which the Court will address below. Regardless, the Court would have to make a credibility determination as to which side's arguments about the willfulness and culpability factors are more believable, and the Court is hesitant to do so. As the facts show, notice of the lawsuit was provided to OHC in some manner. There is no blatant evidence Mr. Rizk completely ignored this, but rather experienced some confusion about the situation and parties to the suit due to the intertwined contractors and sub-contractors involved. However, because OHC acted promptly after default was entered, the Court is encouraged that this mistake is no longer an issue. "[C]ourts are hesitant to deem a default willful when a litigant takes prompt action to cure." Double Eagle Club, Inc. v. BG Cap. Mgmt. S. Fla., LLC, No. CV 117-073, 2018 WL 5087225, at *2 (S.D. Ga. Oct. 18, 2018) (citing Farquharson v. Citibank, N.A., 664 F. App'x 793, 797 (11th Cir. 2016)). Certainly here, OHC acted promptly after the entry of default to file the underlying motion.

Beyond this, OHC has provided numerous potential meritorious defenses. "[A] defendant need only show a 'hint of a suggestion' to meet the requisite standard of a meritorious defense." Buonocore v. Credit One Bank, N.A., No. 3:14-CV-067, 2014 WL 6620623, at *2 (M.D. Ga. Nov. 21, 2014) (quoting Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir. 1969)). Without getting into the merits of these defenses, the Court is satisfied OHC has met this standard.

Additionally, there is insufficient evidence setting aside default would prejudice Plaintiff. The docket reflects that the case is still in the preliminary stages of litigation and has been stayed pending the resolution of these motions. Further, Plaintiff did not assert any arguments as to how setting aside default would prejudice them. Beyond this, Plaintiff seeks around $700,000.00 in recovery, and the Court is hesitant to hold OHC liable for this amount without hearing the case on the merits. Based on the foregoing, OHC's motion to set aside default is **GRANTED**.


### III. MOTION TO QUASH SERVICE

Also at issue is the validity of Plaintiff's service on OHC. OHC argues service was not made in accordance with Florida or Georgia law and therefore should be quashed and the action should be dismissed as to OHC. (Docs. 24, 36.) In response, Plaintiff argues service was effective under Georgia law, OHC was served

properly with process, and therefore the motion should be denied.
(Doc. 31.)

## A. Legal Standard

Federal Rule of Civil Procedure 4(h) provides a corporation
must be served:

> (A) in the manner prescribed by Rule 4(e)(1)[2] for serving
> an individual; or (B) by delivering a copy of the summons
> and of the complaint to an officer, a managing or general
> agent, or any other agent authorized by appointment or
> by law to receive service of process and--if the agent
> is one authorized by statute and the statute so requires-
> -by also mailing a copy of each to the defendant; . . .

The underlying suit was filed in the Southern District of
Georgia; however, OHC is a Florida corporation, and to some extent
the Parties dispute which state's service requirements apply. Rule
4(e)(1) allows for service in the state where the district court
is located *or* where service is made, which means service compliant
with either Georgia or Florida law is permitted.

"Once the sufficiency of service is brought into question,
the plaintiff has the burden [to prove] proper service of process"
and if plaintiff can establish service was proper, "the burden

---

[2] Rule 4(e)(1) provides an individual may be served by:
> (1) following state law for serving a summons in an action brought
> in courts of general jurisdiction in the state where the district
> court is located or where service is made; or (2) doing any of the
> following:(A) delivering a copy of the summons and of the complaint
> to the individual personally; (B) leaving a copy of each at the
> individual's dwelling or usual place of abode with someone of
> suitable age and discretion who resides there; or (C) delivering a
> copy of each to an agent authorized by appointment or by law to
> receive service of process.

F.R.C.P. 4(e)(1).

shifts to the defendant to 'bring strong and convincing evidence of insufficient process.'" <u>Cadot v. Miami-Dade Fire Rescue Logistics Div.</u>, No. 13-23767-CIV, 2014 WL 1274133, at *1 (S.D. Fla. Mar. 27, 2014) (citations omitted). Actual notice does not cure defectively executed service. <u>Laurent v. Potter</u>, 405 F. App'x 453, 454 (11th Cir. 2010) (citing <u>Albra v. Advan, Inc.</u>, 490 F.3d 826, 829 (11th Cir. 2007)).

**B. Analysis**

OHC questions the sufficiency of service under both Georgia and Florida law. Under Florida law, OHC argues service was ineffective because the Florida statute requires service efforts to be made pursuant to the hierarchy listed therein, and there is no evidence such attempts were made. <u>See</u> FLA. STAT. § 48.081. Under Georgia law, OHC argues service was ineffective because Ms. Bosler was an administrative assistant and not properly authorized by OHC to accept service. Plaintiff must therefore provide evidence of proper service of process.

Plaintiff asserts Ms. Bosler represented herself as OHC's office manager and told the process server she had the authority to accept service on OHC's behalf. (Doc. 31, at 3-4.) Further, Plaintiff argues service was effective under Georgia law. OHC contends Ms. Jacobs was not qualified to serve process under Georgia law, the affidavit of service is deficient on its face because it indicates process was served under Florida law, and

again that Ms. Bosler was not a proper employee to accept service. (Doc. 36.)

Since Plaintiff does not contend service was proper under Florida law, the Court will only analyze the service under Georgia law. Pursuant to O.C.G.A. § 9-11-4(e)(1)(A), for actions against domestic or foreign corporations, service shall be made by delivering a copy of the summons and complaint to the president or other officer, a managing agent thereof, or a registered agent thereof.[3]   A "managing agent" is a person employed by the corporation who is at an office of facility in the state and has managerial or supervisory authority for the corporation. O.C.G.A. § 9-11-4(e)(1)(B).  If for any reason service cannot be perfected in this manner, the Secretary of State can receive service as an agent of a corporation.  O.C.G.A. § 9-11-4(e)(1)(A).

The Parties dispute the official title of Ms. Bosler.  OHC argues Ms. Bosler was an administrative assistant and not an officer manager, and therefore not a proper party to accept service.  (Doc. 24, at 8.)  However, Plaintiff contends Ms. Bosler identified herself as a managerial person that was authorized to accept service.   (Doc. 31, at 1.)   Ms. Bosler states that her

---

[3] Both Parties cite an outdated version of this statute that included language that service could be perfected on the president, other such officers, secretary, cashier, managing agent, or registered agent.  (See Doc. 24, at 7; Doc. 31, at 5.)  However, the statute was updated in 2013 and that language was deleted.  Plaintiff attempts to rely on Northwestern Nat. Ins. Co. v. Kennesaw Transp., Inc. to illustrate that the service was sufficient; however, that case was decided based on the language of the statute before 2013.  See 309 S.E. 2d 917, 919 (Ga. Ct. App. 1983).

official title is "Office Administrator," that OHC has never authorized or designated her to receive service, and that she did not understand the documents were related to a lawsuit or time sensitive when they were left in her possession. (Doc. 36-1, at 1-2.)

For proper service under Georgia law, Plaintiff was required to serve OHC's president or another officer, a managing agent of OHC, or OHC's registered agent. Ms. Bosler does not appear to meet any of these qualifications, and therefore service upon her was insufficient. The Court therefore **GRANTS IN PART** OHC's motion to quash service. However, the Court is hesitant to dismiss OHC as a party due to this simple misunderstanding and lack of clear communication between the Parties. Based on the foregoing, the Court will allow Plaintiff an additional period of **FOURTEEN (14) DAYS** to perfect service of process on OHC in accordance with Rule 4. Failure to perfect service within this time period shall result in dismissal of the Amended Complaint against OHC without further notice. Therefore, at this time, OHC's motion is **DENIED IN PART** to the extent it requests the Court to dismiss the action as to OHC.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant OHC's motion to set aside default (Doc. 23) is **GRANTED** and motion to quash service (Doc. 24)

is **GRANTED IN PART AND DENIED IN PART**.  The Clerk is **DIRECTED** to **SET ASIDE** the entry of default as to OHC (Doc. 20).  Plaintiff is **GRANTED FOURTEEN (14) DAYS** from the date of this Order to perfect service of process on OHC in accordance with Rule 4.

**ORDER ENTERED** at Augusta, Georgia, this  *11th*  day of August, 2021.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA